Mr. Markovich, you may proceed when you are ready. Thank you, Your Honor. Okay, may it please the Court. Well, Your Honors are here today for several matters. I am here today concerning Appellant Ralph Reilly's great idea. A great idea that Reilly and Steve Wozniak attempted to jointly bring to fruition with Charter Oak State College and the Apollo Group. But then Appellate Steve Wozniak embarked on his own and did a deal to form WozU with a different group. For Reilly's great idea, Steve Wozniak was paid $1 million plus a significant stake in a company. For Reilly's great idea, Reilly was paid nothing. There are three issues before the Court. Number one is, may an implied-in-fact contract arise under California law if the creator of a valuable idea does not offer the idea for sale, but rather offers the idea for joint marketing and sale to third parties? I mean, in terms of the implied-in-fact contract, what it seems to be is that if there was an implied-in-fact contract, it was that if he managed to establish the school, Mr. Wozniak would lend his name. That seemed to be it. But, of course, he didn't establish the school and he didn't lend his name. But I don't see, particularly in light of the Ferris case, how you can say that you've established that he agreed to pay, you know, if his name was used for any school. Just for the idea of having his name attached to the school, it doesn't, how do you distinguish the Ferris case? Yeah, it's a very good question. And I think, I think we made this reference in our brief, but I'll bring it to the attention of the Court again. If you look at… Because in Ferris, you know, they go to Engberg with this idea for the sports, you know, trivia show. And I'll put it together and then you be the host. It's sort of like you lend your name. And then, you know, they went ahead and did their own show with Engberg, sports trivia show. And the Court said there wasn't enough to show that there was an agreement to pay. It was just Engberg. It seems almost on all fours. Well, I would disagree respectfully with that, Your Honor. Because if you look at the License Content Agreement, which is in the record at ER 0233, subsection C, License Content, License Grant, different to the extent license provides licensee with any content created exclusively by licensor. The license, this is Mr. Bosniak's license from WOSU. One of the components of his license agreement was content. That content came from Mr. Riley. So this wasn't just a name and likeness deal. What content are you referring to? It's in the license agreement, which was negotiated and executed between Mr. Bosniak and… You're not talking about just the idea of having his name on a school. You're talking about something more. Tell me what the more is. The whole concept. It wasn't just having his name on the school. It was the whole plan that Mr. Riley came up with for the school. What the school would do. What type of courses it would be. That all came from Mr. Riley. And that seems to lead into the copyright claim, which of course was rejected by the jury. And you're not bringing that up. No, we actually did bring that up, Your Honor, in our briefing. That we lost on the copyright claim. And that you're not appealing the loss. We're not appealing the loss. We felt that it wasn't worth appealing the loss. It was the substantial similarity test is what we lost on the copyright claim. They compared, you know, what Riley had created with what the school had. And they just didn't feel that there was enough of a substantial similarity. It was a trier effect issue. But the agreement I'm referencing here, which was not negotiated between Riley and anybody else. This was between Bosniak and the school itself actually calls for content. The content of which came from Riley. The whole concept came from Riley. What was going to be done? It wasn't just sticking Bosniak's name on the school. So the agreement that you, when you refer to an agreement, you're not referring to an agreement between Riley and Bosniak. You're referring to an agreement between Bosniak and WOSU. I'm referring to the licensing agreement between WOSU and Bosniak. Whereby Bosniak was paid a million dollars and was given a significant stake in the company via an operating agreement, which I believe is referenced in that licensing agreement. I thought that the whole idea of an implied in fact contract was one in which your client would have a contract with a licensing agreement with Bosniak. Not that somebody else would have an idea, would have a licensing agreement. The reason I bring up the licensing agreement, Your Honor, is because Mr. Riley had nothing to do with negotiating that licensing agreement. And he's not a party to it. Independent third party, WOSU, negotiated with Mr. Bosniak that licensing agreement. They did not just take Bosniak's name and likeness, which would be akin to the Ferris case. They also have a specific clause in here concerning content. The content was what Mr. Riley had created. So you can't say that Mr. Riley engineered that this licensing agreement would cover what he did because he wasn't even a party to it. And how is that different from the copyright claim? I'm sorry? And how is the content created by Riley for purposes of an implied in fact contract different from the copyright claim that you presented to the jury and lost? Different from what? A copyright claim, Your Honor? Yes, the copyright claim that you presented to the jury and that you lost on. I don't understand the argument here, counsel. I thought the implied in fact contract required some evidence of an agreement between Bosniak and Riley. You keep referring to the agreement between WOSU and Bosniak, of which Riley has no part. And Judge Riley, you don't have a monopoly on the confusion. Yeah. Okay, so. Bosniak and Riley spoke, communicated by email. Do they have an agreement? Yes, they actually went out to Charter Oak State. What is the evidence of the agreement? They went to Charter Oak State College together. They went to the Apollo Group together. This was all pitching Mr. Riley's idea. It was only when it was the third time that Mr. Bosniak did it on his own. I still don't see the evidence of an agreement. The fact that people go and pitch an idea to somebody that's unsuccessful in the pitch doesn't mean that the parties have an agreement, a formal agreement. You don't have anything written, so you're trying to get this as an implied in fact contract. But I'm still looking for evidence of what that contract was. Well, we believe, Your Honor, if you had a look at the Goodness Films case, we believe that's on point. Another case isn't going to help you, Counsel. I'm looking for facts, not for law. I'm looking for the evidence that Bosniak and Riley had some kind of an agreement, even if they didn't reduce it to writing. Well, Your Honor, Bosniak admits that it was Riley's great idea. That's in the record. He admitted that when WASU was formed, that it was based on Riley's great idea. He had gone with Riley to Charter Oak State College. In fact, Bosniak even signed a contract with Charter Oak. He went with Riley to the Apollo Group, pitching this great idea. As I said, you might have had an implied in fact contract that if Riley established the school and got it off the ground, Bosniak would lend his name to it. But he didn't do that. It wasn't successful. And so now you're reduced to saying that you had a contract for the compensation of the idea of the school itself. So that's one part of it. And then the second part is a whole bunch of materials about what the school would look like. That all went to the copyright claim, which you lost. Right. And so it seems to me the only thing left, because all the materials that went to the jury and everything else that wasn't copyright is preempted, and that lost, all that is flushed out. And the only thing left is this one idea, and I just, I'm with Judge Riley, I don't see where you have evidence that Bosniak agreed to pay him just for the idea, and the Farris case seems to highlight this exact distinction. Well, we don't believe, Your Honor, as we've stated in our brief, that the implied-in-fact contract under Cal Syllable Code Section 1589, 1621, Desney or the Seehan cases, requires that Bosniak had to agree to be paying Riley for the great idea. We believe that the fact that they had agreed to embark on it jointly is enough to satisfy the requirements of all of those. We believe the dicta in grasso, which the district court judge applied, is incorrect. We believe Goodness Films is more on point as to what happened here, and we cited that in our brief at page 17, Goodness Films. Now it seems, Counselor, there's a Ninth Circuit case, I think it's called Aliodi, which seems to, as I see, reiterate the Desney rule. That case, as far as I can tell, is still valid. What's your response to the Aliodi case? Because I know opposing counsel is going to come up here and cite it to us. I don't believe that's the controlling case. We believe Goodness is most on point. Well, but Aliodi is a circuit case, and Goodness is a district court case. So tell me how we get around Aliodi. Because opposing counsel is going to talk about it, so I'm trying to give you a chance now. I will save that for rebuttal then, Your Honor, once opposing counsel talks about it. All right, do you want to reserve then? Yes, I'll reserve. All right, thank you. Thank you. May it please the Court, Aaron Finter on behalf of the defendants' appellees. And as the Court appears to me to be aware, there's many problems with the plaintiff's Desney claim. One of the first problems is the fact that what he's trying to do is take an entertainment industry norm and apply it in a business setting. There's no question that Mr. Wozniak was not a movie producer. He's not a director. He's not someone who's going to publish a song or some sort of a literary work. And what's missing in this case that is common in Desney and a lot of the cases that cite to Desney is that there is no evidence that the plaintiff went to Mr. Wozniak and stated, I want compensation for my idea. There's no evidence that the plaintiff provided Mr. Wozniak with screenplays, story plots, production budgets for some film. None of that is evidence in this case. There's no evidence that Mr. Wozniak took some idea and went out and marketed it to anyone else. The undisputed evidence in this case is that many years after Mr. Wozniak originally had a couple of email communications with the plaintiff, another group that was operating an existing online school approached Mr. Wozniak and requested the ability to license his name in connection with their ongoing school. So as this court pointed out, the difference here is that what the plaintiff had was an idea for an online school. He never had any capital. It never actually existed. It never became anything more than a demo for a website and an outline for a promotional video that was never actually filmed. That was, in essence, the plaintiff's school. What Mr. Wozniak did was contracted with an online school that had curriculum, had faculty, had students, had an actual physical location, and had capital and was operating. The difference after Mr. Wozniak came along is that there was a change in the name of the school to Waju. That was the change. Counsel keeps citing to the license agreement for this idea that because Mr. Wozniak had the ability to provide content to the school, he therefore did. Well, that's not the evidence. The evidence at the district court level was that Mr. Wozniak provided nothing other than the right to utilize his name in connection with an ongoing school. That was it. And so what the plaintiff is really arguing in this case is that by having a brief discussion with Mr. Wozniak, he, in essence, obtained some sort of an exclusive right to license Mr. Wozniak's name to other people for a specific purpose. And there is no legal basis for that argument because there is no evidence that Mr. Wozniak gave him any such right. We don't dispute that the plaintiff prepared some kind of a work. And again, the evidence at the district court level was the work that he prepared was a demo for a website for a school he called the Woz Institute of Technology and an outline for some sort of a promotional video that he never filmed. That was the work. We don't dispute it was prepared, but the issue is, was anything disclosed to Mr. Wozniak for sale? And the answer is no. There's absolutely no evidence of that. And in his deposition testimony, the plaintiff was very clear that he wanted to start his own school. And we asked him questions, and his response was extremely clear. He wanted to start a school. The only thing he was asking for from Wozniak was the use of his name in connection with that school. And as the court has pointed out, had the plaintiff succeeded, if someone had had the capital to fund his idea and had he actually created it, then perhaps he would have some kind of an argument. But we know that did not happen. And there is no basis, again, for this belief that by speaking with Mr. Wozniak, the plaintiff obtained this right to license Mr. Wozniak's name to someone else, which is the compensation that he's seeking in this case. With regard to the claim for money had and received, that's the preemption issue. I can address that if the court would like. Plaintiff's counsel didn't address it in his arguments. It seemed, counsel, that there were a number of other courts that had ruled in your favor. I didn't see any specific Ninth Circuit cases. I'm not saying that those cases are wrong. I'm just curious. Are you aware of any published Ninth Circuit cases that have addressed this specific issue? No, not this specific issue because the problem is that all these cases, again, they all really relate to the entertainment industry, which we don't have that here. And so I am not aware of a case that's directly on point where a court has said that the DESNY doctrine somehow applies outside of the entertainment industry to a traditional business setting, which would be odd because typically in a business setting, parties would be entering into some sort of an NDA before any information is provided. Apparently, in the entertainment industry, that's not how it works. But there is no case, to answer your question, Your Honor, that I'm aware of that's directly on point where someone addresses how this would work in a business context. And to the extent that there are some district court decisions, I was referring to the money hadn't received, the count two claim. There are some district court cases that are clearly in your favor. I was just curious. I haven't seen any Ninth Circuit published decisions in your favor on that. I'm not aware of any, Your Honor. No. And on the preemption issue, I mean, the parties agree on the two-part test to be used. That was the test that was used by the district court. There really, if you look at count two, which is for money hadn't received, and count three, which was the copyright infringement, it's the same claim. The plaintiff is arguing that someone owes him some compensation for the use of what he's termed the plaintiff's work in both claims. And in each claim— I'm coming back to the distinction between the idea and then the more detailed expression of the idea in particular things that then became the subject of the copyright claim. But the idea itself for the school, that's not a protectable thing under copyright. I have a hard time seeing that it's preempted. It may be meritless because I'm not sure I see how the hadn't received claim is really any different from the Desney claim, but I don't see how it's preempted. Well, the interesting thing in this case— Your Honor, I am not going to argue that an idea is something that's protected by copyright law. But the odd thing in this case is it was the focus of trial, and at trial the only issue to be addressed was the copyright infringement claim. And so it is the plaintiff who has framed his claim such that he is arguing in both claims that somehow that idea was protected. I don't agree legally speaking. I disagree that you can copyright an idea. But as the district court noted, that was the focus at the trial in this matter, which, again, was only on the copyright claim. So there really wasn't from the plaintiff's standpoint. His claims were pled almost identical. The damages are the same thing, the profits that Mr. Wozniak received from licensing his name to another school. But to the extent he sort of repackages the Desney claim as a hadn't received, it's not preempted. I mean, it may fail, but I don't see how it's preempted. I think it is, and I would agree with the analysis from the cases that we cited. I mean, as far as, you know, is it under the two-part test, the same subject matter, again, if you look at count two and three, the subject matter is the same, what is pled. And argued. And there isn't an additional element. But the Desney claim is based on the idea of having a school with his name on it. And that's not really protectable under copyright. So how can it be preempted by the Copyright Act? And if that's what the hadn't received is based on, I understand you could have part of the hadn't received that's based on the materials that were subject to the copyright. But we have to sort of split these out. Your Honor, I think the only way I can answer is that it comes down to the fact that both those claims are both based on what is defined as Riley's work under the plaintiff's complaint. So it's dealing with the exact same information. But doesn't Riley's work include both pieces? So you'd have to sort of separate them out? It does. It includes ideas, curriculum, I mean, things that never, I don't believe, there's no evidence that ever actually existed. So it's very, very broad the way it's stated. So counsel, is your argument then, I'm looking at the second cause of action here, that when there's Riley's work, in a sense, you'd be arguing that Riley's work is an expression somehow of this idea. That is what the plaintiff has argued throughout the case. And then if the work is the expression of the idea, then that claim would be preempted if it's the expression of the idea as opposed to purely the idea. I believe so, Your Honor. Do you see no overlap between the Dez Snee claim and the hadn't received? Well, the problem is I see overlap in every single claim that they pled. That's why I see there's a component of it that's not preempted. So, yeah, and, you know, I'm trying to answer the question, Your Honor, but that's the problem is every single claim they've pled, there is overlap, which is why I find it interesting but incorrect when the plaintiff tries to argue that, well, if this claim is preempted, I'm left in some no right zone. Well, I would submit that it's not a no right zone when you have no meritorious claim to begin with. And so I'm sure that every plaintiff who has no meritorious claim would argue, well, I'm left in a no right zone. Well, no, it's a no claim zone. You don't have any legal claim, then there is no justification for a court or a jury to award you anything, which is where the plaintiff finds himself now. I have a question about the attorney's fees, and that is the district court found that the copyright claim was triable, but then later found it was objectively unreasonable and that there was virtually no evidence of copyright infringement. It just seemed the district court just sort of had to change a heart, was sort of too lenient at summary judgment, and then just changed its mind and then decided to award fees. But it's hard to say that something is objectively unreasonable if it's triable. Yeah, I think candidly, I think that the district court was given the plaintiff every inference, every benefit of the doubt, and the problem is we went into a trial where, again, the only issue was copyright infringement, and the plaintiff really didn't focus on any materials that he actually copyrighted. The focus was always on this quote-unquote great idea throughout the trial, and so there was really nothing for a jury to even really look at and compare. And I think part of it had to deal with the fact that the court recognized that the parties participated in a settlement conference prior to trial where the settlement judge provided both sides with the same information, which was plaintiff, this only ends in one of two ways. Either you lose on summary judgment or you lose at trial, but you're going to lose. And for some reason, the plaintiff was unfazed and said, well, then I will accept in settlement something just under $3 million. That was not a reasonable position to take, especially given at trial, what the plaintiff asked the jury for was $500,000. So the plaintiff has never been reasonable throughout this case. There's never been an explanation as to why the plaintiff sued Southern Careers Institute in the first place. Southern Careers Institute is merely a company that purchases curriculum from Waz-U, and they did so before the name change and after the name change. Nothing changed there. So there was never any basis for that. Can I also ask about the issue of the division? Because I see, as I've said several times, I see a sharp distinction between the DESNY claim and the copyright claims, and yet the district court just mushed it all together in fees for everything. And why shouldn't we at least require an allocation between the two parts of the case? Because if you look at the arguments made by the plaintiff in response to the initial motion to dismiss, which I believe is cited in the court's order, what the court points out is that at the time of the motion to dismiss, the plaintiff was arguing that all the claims arise from the same nucleus of operative facts. So in other words, at the time that we were arguing over the motion to dismiss, everything was related. Well, after the plaintiff loses on all their claims, when we're arguing over the attorney's fees, suddenly the claims are unrelated. The plaintiff themselves have argued in this case that the claims arise from the same nucleus of operative facts. You can't then reverse that after you've lost on all your claims and say, just kidding, these claims are actually completely different because they simply aren't. And there's no reasonable reading of the complaint that would lead someone to the belief that these claims are not related. A reasonable reading of the complaint is that each and every count is based on the same facts. And that's all I have, unless the court has any further questions. All right, thank you very much, counsel. Yes, hello. Well, I agree with the court that the money had and received claim is not printed. And the key distinction, I believe, is that it's privity between the parties as opposed to the world at large. The money had and received claim is against a specific individual. Copyright claim is against the world at large. I believe Justice Estabrook, who we cited, brought this point out at some point. And the money had and received claim should not have been dismissed based upon preemption under the Copyright Act. Let me get back to Judge Bybee's question, which I think we started off at the beginning here. If it's not preempted, then how is it different than the claims you've already lost? Well, the decision by the district court was on preemption, so we haven't even gotten to summary judgment on this claim. It hasn't been briefed. No, but there are other claims in the case that did go to trial that you lost on. And there are other claims that were granted summary judgment on. I'm just trying to understand how is – if that claim is not preempted by copyright, how is it fundamentally different from the other claims which you did lose on the merits? Well, money had and received is effectively a quantum merit claim. So it's taking benefit of Riley's idea and making money on it and him not getting compensation. But since it was decided by – and it'd be a quantum merit unjustified because it's a DESNY claim. It rests on the DESNY theory. So it may not be preempted, but it's going to stand or fall with the DESNY claim. I don't necessarily agree with that, Your Honor. But I think also when we discussed the DESNY claim, we've ignored really Cal Civil Code Section 1589 and 1621, opposing counsel attempted to frame everything as being in the entertainment sphere. But neither 1589 or 1621 of the Cal Civil Code are specifically related to entertainment. They're general contract principles that DESNY happened to use and illuminate. But those are general contract principles. So to say that it's just in the entertainment sphere is incorrect. And concerning the attorney's fees questions that you raised, we agree with the court also that the court, the district court, had decided on summary judgment that we had a claim that was worth trying. They also did not grant the – I believe it was the Rule 50 motion. And at the end of evidence at trial, they let it go to the jury. So then to claim that we're objectively unreasonable on our copyright claim is a bit odd. But you could have – you can certainly imagine a situation in which you believe that there were facts that need to be determined. I didn't hear you so well, sir. But there certainly are cases in which you can imagine in which a district judge might say there are facts here that need to be determined. But once the jury determined the facts, you might decide that it was then objectively unreasonable to have brought the claim. Well, except that it's a two-part test on the reasonable. And we passed the first reasonableness test on summary judgment, which got us to trial in the first place. So it was the second reasonableness test that was determined at trial. But we had already passed one of the two twice, both on summary judgment and on the Rule 50 motion. So to say that overall our claim was objectively unreasonable as an entitlement to internal space seems quite unreasonable to me. All right. Thank you very much, counsel. Thank you both for your briefing argument in this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS